UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

INDIANA LUMBERMENS MUTUAL          )
INSURANCE COMPANY,                 )
    Plaintiff,                   )
                        )
        v.                       )  Civil No. 1:16-cv-692
                        )
TIMBER TREATMENT                   )
TECHNOLOGIES, LLC, et al.,         )
    Defendants.                  )

REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. 69). After a representative for the defaulting Defendants failed to respond to Plaintiff's motion or to appear at the hearing on September 29, 2017, the undersigned took Plaintiff's motion under advisement.[1]

## I. INTRODUCTION

### A. Background

Plaintiff Indiana Lumbermens Mutual Insurance Company ("Plaintiff" or "ILM") is a mutual insurance company incorporated under the laws of Indiana with its principal place of business in Philadelphia, Pennsylvania. (Compl. ¶ 4.) The defaulting defendants are Timber Treatment Technologies, LLC,

---

1. The record before the Court includes the Complaint (Dkt. 1) ("Compl."), the Motion for Entry of Default Judgment Against Defendants Timber Treatment Technologies, LLC, Karen M. Slimak, and St. Tammany Parish Coroner's Office (Dkt. 69) ("Mot. Default J."), the Supplemental Memorandum of Law in Support of Motion for Entry of Default Judgment Against Defendants Timber Treatment Technologies, LLC, and Karen M. Slimak (Dkt. 142) ("Suppl. Mem. Supp."), and all attachments and exhibits submitted with those filings.

("TTT") and Karen M. Slimak ("Ms. Slimak") (collectively "Defendants"). TTT is a Michigan limited liability company with its current principal place of business in Greenville, South Carolina. (Id. ¶ 5.) Ms. Slimak is the sole member of TTT and is a citizen of South Carolina. (Id. ¶ 7.)

On June 20, 2016, Plaintiff filed this action against TTT, Ms. Slimak, homeowners Ashley Goodwin ("Ms. Goodwin"), Richard Gale ("Mr. Gale"), Raymond J. Howard ("Mr. Howard"), Ann Myers ("Ms. Myers"), and Karen Sutherland ("Ms. Sutherland") (collectively the "individual homeowners"); the St. Tammany Parish Coroner's Office (the "St. Tammany Coroner"); and the Make It Right Foundation and two of its New Orleans-based limited liability companies ("Make It Right") pursuant to common law and the Declaratory Judgment Act, as amended, 28 U.S.C. §§ 2201 et seq. (Id. ¶ 1.) Since filing the lawsuit, Plaintiff has settled with the individual homeowners, the St. Tammany Coroner, and Make It Right, leaving only Defendants as Plaintiff's opposing parties in its lawsuit. (Suppl. Mem. Supp. at 2.) Plaintiff alleges that its commercial general liability insurance policies do not provide coverage to Defendants for any potential damages that could result from the lawsuits filed by the individual homeowners, the St. Tammany Coroner, and Make It Right against Defendants (the "Underlying Lawsuits"). (Compl. ¶¶ 1-2; Mot. Default Judgment ¶¶ 40-43.) Plaintiff now seeks

2

declaratory judgment regarding its rights and obligations to Defendants. (Compl. ¶ 1.)

## B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject matter and personal jurisdiction over the defaulting parties. Pursuant to 28 U.S.C. §§ 1332(a) and 2201, the Court has subject matter jurisdiction over this action, because complete diversity of citizenship of the parties exists and the amount in controversy exceeds $75,000.00. (Id. ¶ 18.) Pursuant to Virginia Code § 8.01-328.1(A)(1), the Court has personal jurisdiction over Defendants, which provides that a Virginia court may exercise personal jurisdiction over any person in a matter related to that individual's transactions of business in Virginia. Defendants conducted business in Virginia related to the claims in this case. (Id. ¶¶ 5, 19-20.)

Venue must also be proper for the Court to render default judgment. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to the claims in this case occurred in this District. (Id. ¶ 19.)

## C. Service of Process

As a general rule, a defendant must be served with the summons and complaint filed with the court within ninety days after the filing of the complaint for service to be proper. Because Federal Rule of Civil Procedure 4(m) requires service to

3

occur within ninety days after the filing of the complaint, Plaintiff submitted its Motion to Extend Time to Serve Defendants (Dkt. 38) in order to secure enough time to effectuate service upon Defendants. The Court granted Plaintiff's motion, extending the deadline to effectuate service upon TTT until November 16, 2016, and extending the deadline to effectuate service upon Ms. Slimak until December 16, 2016. (Order (Dkt. 42); Am. Order (Dkt. 51).)

Federal Rule of Civil Procedure 4(e) provides specific ways to properly serve an individual defendant. Both Defendants were properly served in this case in accordance with Federal Rule of Civil Procedure 4(e)(1), which provides service will be proper if it follows state law in the state where the district court is located.

On August 29, 2016, Plaintiff sent service to the Virginia State Corporation Commission (the "Commission") to effectuate service on TTT. (Cert. Compliance (Dkt. 50).) The Clerk of the Commission was properly served as the statutory agent for TTT on September 14, 2016, and the Commission then submitted copies of the service documents by mail to TTT's address on September 20, 2016. (Id.) This process was in accordance with Virginia Code § 13.1-766(B), and therefore service was proper under Federal Rule of Civil Procedure 4(e)(1) with regards to TTT.

Pursuant to the Court's Amended Order (Dkt. 51), Plaintiff

4

published notice of service for Ms. Slimak for four successive
weeks in each of the three newspapers ordered by the Court: the
Springfield Connection, the Star Ledger, and the Greenville
News. (Springfield Connection Aff. (Dkt. 52-1); Star Ledger Aff.
(Dkt. 53-1); Greenville News Aff. (Dkt. 59-1); Proof Publ'n
Serv. (Dkt. 60) ¶ 4.) The final publication occurred on December
14, 2016. (Proof Publ'n Serv. (Dkt. 60) ¶ 4(c).) This process
was in accordance with Virginia Code § 8.01-317, and therefore
service was proper under Federal Rule of Civil Procedure 4(e)(1)
with regards to Ms. Slimak.

### D. Grounds for Default Judgment

Federal Rule of Civil Procedure 55 provides for the entry
of default judgment when "a party against whom a judgment for
affirmative relief is sought has failed to plead or otherwise
defend." Defendants have not appeared, answered, or otherwise
filed any responsive pleadings in this case. On December 8,
2016, Plaintiff filed its Request for Entry of Default Against
Defendant Timber Treatment Technologies, LLC (Dkt. 54). On
January 19, 2017, the Clerk of the Court issued the Entry of
Default (Dkt. 61) against TTT. On February 10, 2017, Plaintiff
filed its Request for Entry of Default Against Defendant Karen
M. Slimak (Dkt. 63). On March 1, 2017, the Clerk of the Court
issued the Entry of Default (Dkt. 65) against Ms. Slimak. On
March 15, 2017, Plaintiff filed the Motion for Entry of Default

Judgment Against Defendants Timber Treatment Technologies, LLC, Karen M. Slimak, and St. Tammany Parish Coroner's Office (Dkt. 69) presently before the Court. While Plaintiff originally sought default judgment against the St. Tammany Coroner, Plaintiff has since settled with the St. Tammany Coroner, leaving TTT and Ms. Slimak as the only parties Plaintiff seeks default judgment against. (Suppl. Mem. Supp. at 2-3.)

## II. FINDINGS

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiff has established the following facts.

Plaintiff ILM is a mutual insurance company incorporated under the laws of Indiana and has its principal place of business at 2005 Market Street in Philadelphia, Pennsylvania. (Compl. ¶ 4.) Plaintiff issues commercial general liability insurance policies to customers, including both primary policies and umbrella policies. (Id. ¶¶ 1, 21-22.)

Defendant TTT is a Michigan limited liability company with its current principal place of business in Greenville, South Carolina. (Id. ¶ 5.) TTT's former principal place of business was in Springfield, Virginia. (Id. ¶ 5.) Defendant Ms. Slimak is the sole member of TTT and is a citizen of South Carolina. (Id. ¶ 7.) TTT designed, manufactured, and sold a product called TimberSIL. (Id. ¶ 30.) TimberSIL is a wood product infused with

6

glass in order to be long-lasting and resistant to rot, decay, and termites. (Id. ¶¶ 1, 31.) TimberSIL has primarily been used to construct decks. (Id. ¶¶ 1, 31.)

TTT became a defendant in the Underlying Lawsuits beginning in 2014. In June 2014, Mr. Howard, Ms. Myers, and Ms. Sutherland filed a class action lawsuit against TTT and Ms. Slimak in the Court of Common Pleas in the County of Greenville in South Carolina (the "Howard Lawsuit"). (Id. ¶ 29, Ex. K.) The Howard Lawsuit alleged that its plaintiffs' purchased TimberSIL, that the TimberSIL had rotted, grew mold and mushrooms, and that its plaintiffs paid to attempt to repair and ultimately replace and remove the TimberSIL. (Id. Ex. K ¶¶ 37-48.) In October 2014, Ms. Goodwin and Mr. Gale filed a class action lawsuit against TTT in the Court of Common Pleas in the County of Greenville in South Carolina (the "Goodwin Lawsuit"). (Id. ¶ 29, Ex. L.) The Goodwin Lawsuit alleged that its plaintiffs purchased TimberSIL, that the TimberSIL became misshapen, deteriorated, buckled, rotted, and grew mold, and that its plaintiffs paid to attempt to repair the TimberSIL. (Id. Ex. L ¶¶ 37-42.) In March 2015, the St. Tammany Coroner filed a lawsuit against TTT in the 22nd Judicial District Court for the Parish of St. Tammany in Louisiana (the "Coroner Lawsuit"). (Id. ¶ 29, Ex. M.) The Coroner Lawsuit alleged that the St. Tammany Coroner purchased TimberSIL and that the TimberSIL resisted stain and scaler, bubbled, grew

mold, and buckled. (Id. Ex. M ¶ 6.) Also in March 2015, Make It Right filed a lawsuit against TTT in the Civil District Court for the Parish of Orleans in Louisiana (the "Make It Right Lawsuit"). (Id. ¶ 29, Ex. N.)  The Make It Right Lawsuit alleged that its plaintiff purchased TimberSIL, that the TimberSIL deteriorated, rotted, decayed, and grew mold and mushrooms, and that its plaintiffs paid to attempt to repair and ultimately replace the TimberSIL. (Id. Ex. N ¶¶ 24-27, 30, 32, 34-36.)

The claims in all four Underlying Lawsuits against TTT involved negligence, breach of warranty, fraud, and violations of consumer protection statutes. (Id. ¶ 34.) Specifically, Underlying Lawsuits alleged that TTT issued certain warranties that TimberSIL would be free from defects, but in actuality, TimberSIL was highly susceptible to rot and mold, causing the TimberSIL to degrade, rot, and fail. (Id. ¶ 32.) The Underlying Lawsuits further alleged that TTT knew or should have known of the defects in TimberSIL and that TTT was put on notice of the defects. (Id. ¶ 33.) The Underlying Lawsuits sought compensatory and other damages related to the purchase or use of the TimberSIL product. (Id. ¶¶ 30, 35.)

Prior to the Underlying Lawsuits being filed, TTT purchased commercial general liability insurance policies from Plainitff, made up of five primary insurance policies and five umbrella policies. (Id. ¶¶ 21-22.) The policy period began on April 15,

8

2006, when the first of the policies started, and ended on April 15, 2011, when the last of the policies expired. (Id. ¶¶ 21-22.) The policies provided liability coverage for "property damage" caused by an "occurrence," so long as the damage occurred during the policy period. (Id. ¶ 24.) The insurance policies provided the definitions of both "occurrence" and "property damage":

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> ...
> 17. "Property damages" means:
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Id. Exs. A-J.) The primary insurance policies provided that Plaintiff had a right and duty to defend the insured against any lawsuit seeking covered damages. (Id. ¶ 27.) However, the primary insurance policies also provided that Plaintiff had no obligation to defend the insured against any lawsuit to which the insurance did not apply. (Id.)

Such coverage under the policies was limited by exclusions. The insurance policies provided for an "expected or intended injury" exclusion and a "your product" exclusion. (Id. ¶ 28.) The relevant language of those two exclusions stated that:

9

    2. Exclusions.
        This insurance does not apply to:
        a. Expected or Intended Injury
            ..."[P]roperty damage" expected or intended
            from the standpoint of the insured.
        ...
        k. Damage to Your Product
            "Property damage" to "your product" arising
            out of it or any part of it.

(Id. Exs. A-J.) The insurance policies also provided a

definition of "your product," which limited the applicability of

the "your product" exclusion:

    21. "Your product":
        a. Means:
            (1) Any goods or products, other than real
            property, manufactured, sold, handled,
            distributed or disposed of by:
                (a) You;
                (b) Others trading under your name; or
                (c) A person or organization whose
                business or assets you have acquired;
                and
            (2) Containers (other than vehicles),
            materials, parts or equipment furnished in
            connection with such goods or products.
        b. Includes:
            (1) Warranties or representations made at
            any time with respect to the fitness,
            quality, durability, performance or use of
            "your product"; and
            (2) The providing of or failure to provide
            warnings or instructions.
        c. Does not include vending machines or other
        property rented to or located for the use of
        others but not sold.

(Id. Exs. A-J.) The five primary policies also contain a "fungi

or bacteria" exclusion which added that:

    This insurance does not apply to:
    Fungi or Bacteria
        a. ..."[P]roperty damage" which would not have

10

> occurred, in whole or in part, but for the
> actual, alleged or threatened inhalation of,
> ingestion of, contact with, exposure to,
> existence of, or presence of, any "fungi" or
> bacteria on or within a building or structure,
> including its contents, regardless of whether any
> other cause, event, material or product
> contributed concurrently or in any sequence to
> such injury or damage.
> b. Any loss, cost or expenses arising out of the
> abating, testing for, monitoring, cleaning up,
> removing, containing, treating, detoxifying,
> neutralizing, remediating or disposing of, or in
> any way responding to, or assessing the effects
> of, "fungi" or bacteria, by any insured or by any
> other person."

(Id. Exs. A-E.) The primary policies also provided a definition

of "fungi," which limited the applicability of the "fungi or

bacteria" exclusion:

> "Fungi" means any type or form of fungus, including
> mold or mildew and any mycotoxins, spores, scents or
> byproducts produced or released by fungi.

(Id. Exs. A-E.) While four umbrella policies had differently

worded "fungi or bacteria" exclusions, and one umbrella policy

did not have any "fungi or bacteria" exclusion, the umbrella

policies stated that they were subject to the terms of any

underlying primary policies. (Id. Exs. F-J.)

On June 20, 2016, Plaintiff filed its Complaint (Dkt. 1)

seeking declaratory judgment that its policies do not cover any

of the damages claimed in the underlying lawsuits against TTT

and Ms. Slimak. (Id. ¶¶ 2, 36-37.)

11

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Plaintiff argues that the Court should only consider its Complaint (Dkt. 1) when evaluating the sufficiency of Plaintiff's claims in its pursuit of default judgment. (Suppl. Mem. Supp. 20.) Specifically, Plaintiff does not want the Court to consider Make It Right's Memorandum of Law in Opposition to Lumbermens' Motion for Entry of Default Judgment (Dkt. 76), as it provides, as an attachment, an amended complaint in the underlying Make It Right Lawsuit. (Suppl. Mem. Supp. 19-20.) If considered, the amended complaint could potentially impact the strength of Plaintiff's claims and its ability to receive default judgment.

It is true that "[w]hen a defendant defaults, it admits 'the plaintiff's well-pleaded allegations of fact.'" JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (quoting Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). Therefore, the facts set forth in a plaintiff's complaint are deemed admitted and a court must evaluate the complaint to ensure that it properly states a claim against the standards of Federal Rule of Civil Procedure 12(b)(6). See GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Furthermore, the focus of default judgment is on the pleadings. See Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 187 F.3d 628

12

(4th Cir. 1999) (per curiam) (unpublished table decision) ("[T]he appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein."). Federal Rule of Civil Procedure 7(a) limits "pleadings" to complaints, answers, and replies to answers. The document Plaintiff is concerned about is an attachment to a response to a motion. It is not a complaint, answer, or reply to an answer.

Therefore, the Court agrees with Plaintiff's threshold contention. Case law does not suggest that other facts aside from those in a complaint should be considered by a court for purposes of default judgment, as a defendant admits the well-pleaded allegations of fact in a complaint upon default, and nothing else. Accordingly, the facts set forth in Plaintiff's Complaint (Dkt. 1) are deemed admitted, and it is appropriate for the Court to evaluate Plaintiff's claims against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff alleges that the insurance policies TTT purchased from it do not provide coverage for any damages sought in the Underlying Lawsuits. (Compl. ¶¶ 1-2, 40-41, 46-47, 54-55, 60-61.) As an insurance dispute before the Court on diversity jurisdiction, the choice-of-law rules of the forum state apply. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154-55 (4th Cir. 2009). For insurance disputes,

Virginia applies "the law of the place where an insurance contract is written and delivered." Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993). In this case, the insurance policies were issued and delivered to TTT at its address in Springfield, Virginia. (Compl. ¶ 23.) Therefore, the Court evaluates Plaintiff's claims under Virginia insurance law.

An insurer has a duty to defend the insured in court when the insured's claim is covered under an insurance policy. To determine whether the duty to defend is implicated, Virginia law follows the Eight Corners Rule. CACI Int'l, 566 F.3d at 155. The Eight Corners Rule "requires courts to look primarily at the underlying complaints and the insurance policy to determine if there is a potential for coverage." Id. If the underlying complaints allege some facts on which the insurer would be liable, then a potential for coverage exists and the insurer would have a duty to defend the insured in the underlying lawsuits. Id. If there is doubt whether ambiguous or incomplete allegations fall within a coverage policy, then the insurer has an obligation to defend. See London Guar. & Accident Co. v. C. B. White & Bros, 49 S.E.2d 254, 256 (Va. 1948); see also C. T. Drechsler, Annotation, Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend, 50 A.L.R. 2d 458 § 22. Therefore, the duty to defend will only not apply "when it is clear from the initial pleading

14

that the insurer would not be liable under the policy for any judgment based on the allegations." Union Ins. Co. v. Riverpoint, L.C., No. 3:06CV372-HEH, 2007 WL 656895, at *2 (E.D. Va. 2007).

Plaintiff asserts that each underlying lawsuit's allegations do not implicate Plaintiff's duty to defend. Plaintiff argues that the alleged damages are not covered under the commercial general liability policies for four reasons: (1) such damages did not occur within the policy period; (2) such damages are not "occurrences" in accordance with the policies; (3) the policies' "your product" exclusion bars coverage; and (4) the policies' "fungi or bacteria" exclusion bars coverage. (Mot. Default J. ¶¶ 40-43; Suppl. Mem. Supp. at 15, 17-18, 17 n.9.) In light of Plaintiff's arguments, the Court considers whether the Underlying Lawsuits' complaints allege any potential for coverage under the insurance policies by following the aforementioned Eight Corners Rule.

## A. Damages Within the Policy Period

The Underlying Lawsuits will have alleged the potential for coverage under the insurance policies if they alleged damages that occurred during the policy period. The policy period began on April 15, 2006, when the first of the policies started, and ended on April 15, 2011, when the last of the policies expired. (Compl. ¶¶ 21-22.) Plaintiff argues that some claims of the

Underlying Lawsuits only allege damages that occurred outside of the policy period. (Compl. ¶¶ 38-41; Suppl. Mem. Supp. at 17 n.9). Therefore, Plaintiff argues, no duty to defend exists for those claims. (Mot. Default J. ¶ 42; Suppl. Mem. Supp. at 17.)

Plaintiff has highlighted two claims in the Underlying Lawsuits that it argues fail to fall within the policy period. First, Ms. Goodwin, one of the named plaintiffs in the Goodwin Lawsuit, alleged that she purchased the TimberSIL products on an undetermined date in 2011 and did not install them until 2012. (Compl. Ex. L. ¶ 37.) Second, Ms. Myers, one of the named plaintiffs in the Howard Lawsuit, alleged that she purchased TimberSIL products on an undetermined date in 2011. (Id. Ex. K. ¶ 40.) Neither of the aforementioned claims alleged specifically that the purchases or the damages occurred before or on April 15, 2011. However, such clarity is not necessary in Virginia insurance law, as these incomplete claims could still result in coverage if, upon "development of the facts," the TimberSIL purchases turned out to be before April 15, 2011. See London Guar. & Accident, 188 Va. at 199-200, 49 S.E.2d at 256. Therefore, the damages alleged by Ms. Goodwin and Ms. Myers, while incomplete as to whether they fell within the policy period, are sufficient for coverage under Virginia law. Plaintiff will have to rely on at least one of the remaining three reasons to show that the allegations of Underlying

Lawsuits do not invoke its duty to defend.

## B. Damages from "Occurrences"

The Underlying Lawsuits will have alleged the potential for coverage under the insurance policies if they alleged damages that can be classified as "occurrences." According to the policies, "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl. ¶ 26, Exs. A-J.) Plaintiff argues that the Underlying Lawsuits' complaints only alleged damages limited to TTT's TimberSIL product and the costs of repair, replacement, and removal of the product, and those damages do not suffice as "occurrences." (Id. ¶¶ 42-47; Suppl. Mem. Supp. at 17.) Therefore, Plaintiff argues, no duty to defend exists. (Mot. Default J. ¶ 40; Supp. Mem. Supp. at 15.)

The Court looks to relevant case law determining when the duty to defend applies to "occurrences" in commercial general liability policies under Virginia insurance law. The Virginia Supreme Court has not appeared to consider whether an insured's defective product can constitute an "occurrence" under a commercial general liability policy. However, in Hotel Roanoke Conference Center Commission v. Cincinnati Insurance Co., the U.S. District Court for the Western District of Virginia predicted that under Virginia law, damage "resulting from the insured's defective performance of a contract and limited to the

insured's work or product is not covered by a commercial general liability policy." 303 F. Supp. 2d 784, 787 (W.D. Va. 2004). The Hotel Roanoke Court supported its conclusion on two major bases. First, commercial general liability policies do not cover damages that are "expected," and it found that damage limited to an insured's work or product must be "'expected' from the standpoint of the insured." Id. Second, Virginia case law has acknowledged that, among other things, a commercial general liability insurance policy "does not cover poor workmanship." Id. at 786-87 (quoting Am. Fire & Cas. Ins. Co. v. Doverspike, 36 Va. Cir. 263 (Va. Cir. Ct. 1995)). The decision in Hotel Roanoke has been cited favorably by courts within the Fourth Circuit with regards to its conclusion that an insured's defective performance of a contract is not an occurrence under a commercial general liability insurance policy. See Travelers Indem. Co. of Am. v. Miller Bldg. Corp., 142 F. App'x 147, 149 (4th Cir. 2005); Nautilis Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807, 816 (W.D. Va. 2013); Catalina London Ltd. v. Am. Invs. Real Estate Corp., No. 1:10-cv-983, 2011 WL 3911104, at *3 (E.D. Va. Aug. 31, 2011).

Further, courts have held that under Virginia law, repair, replacement, and removal costs are also not covered as "occurrences" under commercial general liability insurance policies, so long as the costs were related to damages that were

18

not "occurrences," such as damages limited to defective work or defective products. See Stanley Martin Cos. v. Ohio Cas. Grp., 313 F. App'x 609, 614 (4th Cir. 2009) ("[The] obligation to repair or replace the defective trusses was not unexpected or unforeseen ... and does not trigger a duty to indemnify."); Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 758, 763 (E.D. Va. 2011) ("[T]he replacement of the defective drywall is not an occurrence under the policy."). Such damages would only be covered as "occurrences" if damages once limited to a defective product spread to other nondefective areas, causing additional damages. See Stanley Martin Cos., 313 F. App'x at 614 ("[D]amage a subcontractor's defective work causes to an insured's nondefective work constitutes an occurrence."); Dragas Mgmt. Corp., 798 F. Supp. 2d at 763 ("[A]ny repair or replacement of non-defective components ... constituted an occurrence.").

The Court is persuaded through both the plain language of the insurance policies and the aforementioned case law that damages limited to an insured's defective product are not "occurrences" under commercial general liability insurance policies. Applied to this case, in order to show the potential for coverage under the Eight Corners Rule, the Underlying Lawsuits' complaints would have to allege either damage to property separate from the TimberSIL product or costs for the

repair, replacement, or removal of property separate from the TimberSIL product.

Upon review of the Underlying Lawsuits' complaints, the Court has determined that the Underlying Lawsuits did not show a potential for coverage. The Underlying Lawsuits alleged only damages limited to TTT's allegedly defective TimberSIL product and damages involving the costs of removing and replacing the product. The Howard Lawsuit alleged that only the TimberSIL product had rotted, grew mold and mushrooms, and that its plaintiffs paid to repair, replace, and remove only the TimberSIL product. (Compl. Ex. K ¶¶ 37-48.)[2] The Goodwin Lawsuit alleged that only the TimberSIL product deteriorated, buckled, rotted, and grew mold, and that its plaintiffs paid to repair only the TimberSIL product. (Id. Ex. L ¶¶ 37-42.) The Coroner Lawsuit alleged that only the TimberSIL product resisted stain and scaler, bubbled, grew mold, and buckled. (Id. Ex. M ¶ 6.) The Make It Right Lawsuit alleged that only the TimberSIL product deteriorated, rotted, decayed, and grew mold and mushrooms, and that its plaintiffs paid to repair and replace only the TimberSIL product. (Id. Ex. N ¶¶ 24-27, 30, 32, 34-36.)[3]

---

2. The Howard Lawsuit does state that TimberSIl "permits other property damage to the other building components" and that "water is permitted to enter TimberSIL causing damage to TimberSIL and other property" when describing the general nature of the action. (Compl. Ex. K ¶¶ 9, 59.) However, despite alleging that TimberSIL "permits" damage to other property, the Howard Lawsuit does not allege any such harm befell its plaintiffs.
3. The Make It Right Lawsuit does allege damage to "other exterior elements"

No Underlying Lawsuit alleged that the TimberSIL product caused damages to separate property, and no Underlying Lawsuit alleged costs for repairing, replacing, or removing property aside from the TimberSIL product. Therefore, the damages alleged in the Underlying Lawsuits' complaints are not "occurrences," are not covered under the insurance policies, and do not give rise to Plaintiff's duty to defend.

### C. Damages Within the "Your Product" Exclusion

Independent of whether the alleged damages are "occurrences," the Underlying Lawsuits could also allege the potential for coverage under the insurance policies if they alleged damages that fell outside of the insurance policies' exclusions. Plaintiff argues that the Underlying Lawsuits only alleged damages limited to TTT's TimberSIL product and the costs of repair, replacement, and removal of the product, and the previously described "your product" exclusion bars coverage of those damages. (Compl. ¶¶ 48-55; Suppl. Mem. Supp. at 16.) Therefore, Plaintiff argues that no duty to defend exists. (Mot. Default J. ¶ 41; Suppl. Mem. Supp. at 15.)

As before, the Court looks to case law that considered when the duty to defend applies in light of similar "your product" exclusions in commercial general liability policies. The most

---

and "other affected areas." (Compl. Ex. N ¶¶ 34-35.) However, a close reading of the lawsuit's complaint reveals that such phrases refer to exterior decks, railings, and decorative features that were also made up of TimberSIL products. (Id. ¶¶ 10, 20.)

persuasive case found by the Court is Harbor Court Associates v.
Kiewit Construction Co., in which the U.S. District Court for
the District of Maryland stated that a "named insured's
products" exclusion in a commercial general liability policy
bars coverage for damage limited to the insured's product as
well as the cost of repairing such products. 6 F. Supp. 2d 449,
458 (D. Md. 1998). However, the "named insured's products"
exclusion would only not apply if defects in the product caused
damage to property that was not the insured's product. See id.
While Harbor Court involved an analysis of Maryland insurance
law, courts have noted that Maryland and Virginia insurance law
are similar. See, e.g., Stanley Martin Cos., 313 F. App'x at 613
("Virginia insurance law is not materially different from
Maryland insurance law."). Furthermore, the Harbor Court
decision has been cited favorably by courts applying Virginia
insurance law. See Hotel Roanoke, 303 F. Supp. 2d at 787-88;
Pulte Home Corp. v. Fidelity & Guar. Ins. Co., 80 Va. Cir. 160
n.51 (Va. Cir. Ct. 2004).

The Court is persuaded through both the plain language of
the insurance policy and the aforementioned case law that the
"your product" exclusion bars coverage when the only damage
alleged is to the product itself. Applied to this case, in order
to show the potential for coverage under the Eight Corners Rule,
the Underlying Lawsuits' complaints would have to allege either

22

damage to property separate from the TimberSIL product or costs for repair, replacement, or removal of property other than the TimberSIL products. As previously stated with regards to the "occurrences" analysis, the underlying complaints have not alleged such damage or costs. Instead, the Underlying Lawsuits allege damages to only the TimberSIL product and costs for repair, replacement, and removal of only the TimberSIL product. (Compl. Exs. K-N.) Therefore, the damages alleged in the Underlying Lawsuits' complaints are within the "your product" exclusion, are not covered under the insurance policies, and do not give rise to Plaintiff's duty to defend.

### D. Damages Within the "Fungi or Bacteria" Exclusion

As previously stated, the Underlying Lawsuits may allege the potential for coverage under the insurance policies if they alleged damages that fall outside of the insurance policies' relevant exclusions. Along with the "your product" exclusion, another relevant exclusion is the "fungi or bacteria" exclusion. Plaintiff argues that the Underlying Lawsuits alleged some damages limited to fungi and mold on TTT's TimberSIL product, and the previously described "fungi and bacteria" exclusion bars coverage of those damages. (Compl. ¶¶ 56-61; Suppl. Mem. Supp. at 19.) Therefore, Plaintiff argues that no duty to defend exists for the damages involving damage by fungi or mold. (Mot. Default J. ¶ 43; Suppl. Mem. Supp. at 19.)

As before, the Court looks to case law that considered when Virginia's duty to defend applies in light of similar "fungi or bacteria" exclusions in commercial general liability policies. When considering exclusions under Virginia insurance law, courts have stuck to the plain language of the insurance policy and found the duty to defend will not arise when property damages result from fungi or mold, but only when the exclusions are unambiguous. See Mount Vernon Fire Ins. Co. v. Adamson, 3:09cv817-HEH, 2010 WL 3937336, at *3 (E.D. Va. 2010) ("[T]he Policy unambiguously excludes coverage for occurrences arising out of mold exposure."); Union Ins. Co. v. Williams Contracting Inc., Civ.A.3:05-CV-00075, 2006 WL 1582405, at *7 (W.D. Va. 2006) ("[The] policy explicitly excludes coverage for awards for personal injury caused by exposure to mold.").

The "fungi and bacteria" exclusion unambiguously excludes coverage from property damages arising from fungi or mold, as well as any costs related to attempts to eradicate such growths. Therefore, Plaintiff's duty to defend does not arise for any damages alleged by the Underlying Lawsuits related to fungi or mold. Upon review of the Underlying Lawsuits' complaints, the Court has determined that some of the claims do not show a potential for coverage. Ms. Myers' and Ms. Sutherland's claims in the Howard Lawsuit alleged that the TimberSIL product grew mold and mushrooms and that the plaintiffs paid to remove such

24

growths. (Compl. Ex. K ¶¶ 42, 44, 47-48.) Ms. Goodwin's claim in the Goodwin Lawsuit alleged that the TimberSIL product grew mold. (Id. Ex. L ¶¶ 40.) The Coroner Lawsuit alleged that the TimberSIL product grew mold. (Id. Ex. M ¶ 6.) The Make It Right Lawsuit alleged that the TimberSIL product grew mold and mushrooms, and that its plaintiffs paid to attempt to remove such growths. (Id. Ex. N ¶¶ 24, 26, 30, 32.) These fungi- and mold-related damages alleged in the Underlying Lawsuits' complaints are within the "fungi or bacteria" exclusion, are not covered under the insurance policies, and do not give rise to Plaintiff's duty to defend.

## IV. REQUESTED RELIEF

Plaintiff requests the Court to enter default judgment against Defendants and grant the declaratory relief Plaintiff has sought in accordance with the Declaratory Judgment Act. (Compl. ¶ 1.) The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Should a court provide such declaratory relief, it "shall have the force and effect of a final judgment or decree and shall be reviewable as such." Id.

The undersigned has found that the damages alleged in the

underlying lawsuits are not covered by the insurance policies for three reasons: they are not "occurrences," they fall within the "your product" exclusion, and they fall within the "fungi or bacteria" exclusion. Therefore, the undersigned agrees with Plaintiff and finds declaratory judgment to be appropriate relief in this case.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends default judgment against Defendants TTT and Ms. Slimak. Specifically, the undersigned recommends Plaintiff receive a declaratory judgment that Plaintiff's insurance policies do not provide coverage for the damages alleged in the Underlying Lawsuits, and the Underlying Lawsuits do not invoke Plaintiff's duty to defend Defendants.

VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Defendants at the following addresses:

        Timber Treatment Technologies, LLC
        4 Augusta Arbor Way
        Greenville, South Carolina 29605

        Karen M. Slimak
        41 Flora Louise Drive
        Piedmont, South Carolina 29673

                                    /s/
                              Theresa Carroll Buchanan
                              United States Magistrate Judge

                              _____
                              THERESA CARROLL BUCHANAN
                              UNITED STATES MAGISTRATE JUDGE

October 25th, 2017
Alexandria, Virginia